**Elizabeth TAYLOR, Plaintiff,**

v.

**The CITY OF ST. LOUIS, James Conway, Mayor of the City of St. Louis, Ralph Tatoian, Supply Commissioner for the City of St. Louis, Joseph Clarke, Director of the Department of Welfare for the City of St. Louis, individually and in their official capacities, Defendants.**

**No. 79–1484C(C).**

United States District Court, E. D. Missouri, E. D.

June 29, 1982.

---

Doris Black, St. Louis, Mo., for plaintiff.

John FitzGibbons, Asst. City Counsel, St. Louis, Mo., for defendants.

MEMORANDUM

MEREDITH, District Judge.

This action was brought pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 1981, 1983 and 1985.

Plaintiff brings this action for declaratory and injunctive relief and for actual and punitive damages maintaining in Count I that she placed a bid on May 31, 1978 for the summer food services program for children, that plaintiff had the lowest bid in the amount of $606,330, and that plaintiff failed to get the bid because she was black. Plaintiff further asks that the requirement of a 10% bid bond be declared unconstitutional because it discriminates against blacks. In this instance, in lieu of a 10% bid bond, plaintiff placed a cashiers check in the amount of $3,720 along with her bid. In Count II plaintiff alleges that in November of 1977 she placed a bid for the child care food program, she was the lowest bidder, and that she was not awarded the bid because of her race.

Plaintiff, Elizabeth Taylor, is a black citizen of the United States and she has operated a restaurant and catering business in the City of St. Louis since 1974. Defendant City of St. Louis is a municipal corporation created by the laws of the State of Missouri. Defendant Joseph Clarke is the Director of the Department of Welfare and his responsibility is to administer the food program for the City of St. Louis childcare and summer food programs for children. Defendant Ralph Tatoian is a Supply Commissioner and is responsible for advertising the bids for the food programs and for accepting or rejecting the bids.

On November 22, 1977, the plaintiff placed a bid to operate the food program for the City of St. Louis. She was the lowest bidder. Plaintiff's bid was sixty-four cents per meal. The next lowest bidder was sixty-nine cents per meal, which was made by Servomation. Servomation was awarded the contract.

Shortly after the plaintiff placed the lowest bid on November 22, 1977, she was advised that she would have to have a certified financial statement and would have to show that she was financially capable of handling the food contract. At that time she did not have a financial statement. One was made later on, but was not certified and it showed that plaintiff had liabilities exceeding assets in the amount of $25,000 for the years 1976, 1977 and 1978. She owed $66,600 to the Small Business Administration and $23,000 to the Mercantile Trust Company. Her assets consisted of cash and inventory in the sum of $4,800. Plaintiff's other assets were the land and the building in the approximate amount of $75,000 less reserved for depreciation of approximately $15,000. The various persons to whom plaintiff talked in the City, including all of the defendants, made every effort to let the plaintiff get her financial affairs in order so that they could be assured the contract could be carried out. She went to the Mercantile Bank to try to get a loan in the amount of $125,000. She went to the Small Business Administration to try to get

a $100,000 loan. Plaintiff went to the Gateway Bank to borrow money and she went to Crown Leasing in a effort to finance the contract. All of those financial institutions turned down her requests. The main reason they did refuse plaintiff was because she was in default with the Small Business Administration on loans in the amount of $66,000 and her cash and inventory was approximately $5,000. Plaintiff had a number of civil rights leaders intercede in her behalf, including Jessie Jackson, Solomon Rooks, and Congressman William Clay. None of the plaintiff's suppliers would agree to extend credit to the plaintiff. The defendants, who are City officials, delayed the awarding of the contract to the second lowest bidder until in January in an effort for Mrs. Taylor to get her financial affairs in order. When they determined that they could not be assured that she could get her financial affairs in order, they went ahead and awarded the contract to the next lowest bidder. In order to give plaintiff time to get her financial affairs in order, they extended the contract which was supposed to begin on the first week in January, 1978, to the food processor who was serving at that time on the old contract. Plaintiff had from November of 1977 to the second week in January of 1978 in which to get her financial affairs in order and was never able to do so.

Plaintiff bid, on May 31, 1978, on the second food contract. This contract was under the Department of Agriculture regulations and the Department of Agriculture furnished the money. Plaintiff had the lowest bid at $606,330, but the bid required that the bidder place a 10% bond which would have been $60,633. In lieu of a bid bond the plaintiff put up a cashier's check in the amount of $3,720. Plaintiff's financial picture had not changed from December of 1977 to May of 1978. She was unable to provide a bid bond of 10% and her financial statement was still inadequate. The bid was awarded to the next lowest bidders. A portion of the contract was awarded to Servomation and the balance of the contract was awarded to Jewish Vocational and Employment Services. Both of those bidders furnished a 10% bid bond which accompanied the bid.

The plaintiff's sons testified that they observed the bids and did not see a bid bond attached in the May of 1978 bidding, but the record evidence introduced by defendants shows that an executed bid bond was furnished and written at the time the bid was made in the amount of 10% of the bid.

■ Plaintiff contends that the 10% requirement for a bid bond is unconstitutional and works to the detriment of the black bidders. This is a requirement of the Department of Agriculture which furnishes the money for those programs. It is not an unconstitutional requirement for anyone black or white who intends to bid on these food services. Neither is it discriminatory to require that the bidders have the financial stability necessary to enable them to carry out the contract. To hold otherwise would leave the City and the Department of Agriculture in a position where a person may be awarded the contract and because of their financial situation, they would not be able to carry through with the contract. The result would be that the children would get no meals and this is an undesirable situation.

Plaintiff introduced other testimony which indicated that Mayor Conway had made some racist remarks concerning the plaintiff. Former Mayor Conway took the witness stand and denied any such remarks. The plaintiff also introduced testimony which indicated that some of the employees had indicated that the reason plaintiff did not get the bid was because these contracts belong to the "Mafia." The employees who allegedly made those remarks denied them.

The Court finds that the bid bond requirement is not unconstitutional and is not discriminatory. The Court further finds that the plaintiff's race had nothing to do with the fact that she was not awarded the contract. The sole reason plaintiff was not awarded the contract was that she was unable to furnish a 10% bid bond and that her financial situation was so precarious that the City would not have been justified

in any manner in awarding her the contract. Judgment will be awarded in favor of the defendants and against the plaintiff. This cause will be dismissed with prejudice at plaintiff's cost.