702 F.2d 695
 Elizabeth TAYLOR, d/b/a Liz Taylor's Catering Service, Appellant,
v.
The CITY OF ST. LOUIS; James Conway; Ralph Tatoian; and
Joseph Clark, Appellees.
United States Department of Agriculture; Bob Berglund,
Secretary of U.S. Dept. of Agriculture.
 No. 82-1876.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 9, 1983.
Decided March 15, 1983.
Rehearings and Rehearing En Banc Denied April 25, 1983.
Opinion on Denial of Rehearing Aug. 4, 1983.
 
 Elizabeth Taylor, pro se.
 Doris G. Black, St. Louis, Mo., for appellant.
 Joseph R. Niemann, City Counselor, John J. Fitzgibbon, Associate City Counselor, St. Louis, Mo., for appellees.
 Before HEANEY, ROSS and FAGG, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff/appellant Elizabeth Taylor is a black citizen of the United States who has operated a restaurant and catering establishment in St. Louis, Missouri, since 1974. Defendant City of St. Louis is a municipal corporation created by the laws of the State of Missouri. At all times relevant to this lawsuit, defendant Joseph Clark was the Director of the Department of Welfare and it was his responsibility to administer the Child Care Food Program and the Summer Food Services Program for the city. Defendant Ralph Tatoian was the Supply Commissioner; he was responsible for advertising the bids for the programs. It was his duty to evaluate bids and make the initial determination of acceptability. The City Board of Standardization makes the final determinations regarding all contracts awarded. Both food programs at issue are funded and regulated by the United States Department of Agriculture and administered by the city.[1]
 
 
 2
 On November 27, 1977, appellant submitted a bid to operate the Child Care Food Program, which operates from January to December of the year, excluding the summer months when school is not in session. Appellant's bid of sixty-four cents per meal was the lowest submitted.[2] Shortly after appellant placed the low bid, she was advised that she would have to submit a certified financial statement showing that she was financially capable of handling the food contract. At that time she did not have a financial statement. She later submitted a statement, but it was not certified and it showed that her liabilities exceeded her assets by $25,000 for the years 1976, 1977 and 1978. She owed $66,600 to the Small Business Administration and $23,000 to the Mercantile Trust Company. She had cash and inventory totaling $4,800. The remainder of appellant's assets consisted of the land and building in the approximate amount of $75,000, less $15,000 reserved for depreciation. The various persons to whom appellant talked in the city, including all of the defendants, allowed time for her to get her financial affairs in order so that they could be assured the contract could be carried out. She went to the Mercantile Bank and applied for a loan in the amount of $125,000. She went to the Small Business Administration to try to get a $100,000 loan. She went to the Gateway Bank to borrow money and she went to Crown Leasing in an effort to finance the contract. All the financial institutions denied her loan requests. They refused appellant because she was in default with the Small Business Administration on loans in the amount of $66,000 and her cash and inventory totaled approximately $5,000. A number of civil rights leaders interceded in appellant's behalf, including Jessie Jackson, Solomon Rooks, and Congressman William Clay. None of appellant's suppliers would agree to extend credit to her.
 
 
 3
 The defendant city officials delayed the awarding of the contract to the second lowest bidder until January in an effort to allow appellant to secure adequate financing. Since the contract was scheduled to begin the first week in January, they extended their contract with their prior food processor until the second week in January. Thus, appellant had from November of 1977 until the second week of January 1978 to obtain adequate financial backing, but was unable to do so. When it was determined that appellant could not get financing, the city awarded the contract to Servomation, the second lowest bidder.
 
 
 4
 On May 31, 1978, appellant bid on the Summer Food Services Program. The USDA regulations for this program required that all bidders furnish a bid bond. This was apparently the first time the USDA added this requirement. The required bond was 10% of the bid amount. Once again, appellant had the lowest bid at $606,330. However, in lieu of a 10% bid bond of $60,633, appellant submitted a cashier's check for $3,720 with her bid. Because none of the bidders included the requisite bonds in their bid packages on May 31, the city rebid the contract. Appellant again failed to include a bid bond and her financial statement was still unacceptable. Her financial circumstances had remained virtually unchanged from December 1977 to May 1978. The city rejected her bid and awarded the contract to two companies: Servomation and Jewish Vocational and Employment Services, both of which had furnished a 10% bid bond.
 
 
 5
 Appellant brought this action in United States District Court[3] pursuant to 28 U.S.C. Secs. 1331 and 1342 and 42 U.S.C. Secs. 1981, 1983 and 1985. Appellant petitioned the court for declaratory relief and for actual and punitive damages. In Count I, appellant maintained that her low bid for the Summer Food Services Program was rejected because of her race. She further asked that the 10% bid bond requirement be declared unconstitutional because it discriminates against blacks. In Count II, appellant alleged that her low bid for the Child Care Food Program was also rejected because of her race. The court entered judgment for defendants on both counts.
 
 
 6
 To prevail on a claim under 42 U.S.C. Sec. 1981, the plaintiff must present evidence of defendant's discriminatory intent, as that section reaches only purposeful discrimination. General Building Contractors Ass'n v. Pennsylvania, --- U.S. ----, ----, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). The district court memorandum does not state the legal standard on which the court based its judgment for the defendants. However, the court found as a matter of fact that the appellant's race had played no part in the city's decision to reject her bids. The first bid was rejected solely because of her precarious financial situation. She was not awarded the summer food contract for the same reason, plus the additional fact that she failed to post the proper bid bond. "Findings of fact made by a trial court in a case submitted to the court without a jury shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Kendrick v. Commission of Zoological Subdistrict, 565 F.2d 524, 526 (8th Cir.1977); Fed.R.Civ.P. 52(a).
 
 
 7
 Appellant's claims under sections 1983 and 1985 must similarly fail due to the absence of evidence of intentional discrimination. Thompson v. School District of Omaha, Etc., 623 F.2d 46, 48 (8th Cir.1980) (burden of proving intent rests with plaintiff in a section 1983 action); Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971) (language of section 1985(3) requires intent to deprive of equal protection).
 
 
 8
 The district court also found that the 10% bid bond requirement is neither unconstitutional nor discriminatory. We agree. The USDA regulation, neutral on its face and serving ends otherwise in the power of government to pursue, is not invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than another. Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Here, the bid bond requirement insures that only financially stable contractors will participate in the food service programs. Without such a safeguard, the USDA and the city would be left with no assurance that the bidder could perform the contract, with the result that the children participating in the program might be left without food service. Accordingly we affirm the judgment of the district court, 543 F.Supp. 274.
 
 ORDER
 
 9
 The appellant has filed a voluminous petition for rehearing, alleging (1) that the successful bidders did not furnish the required bid bonds, certified financial statements, or United States Department of Agriculture registration permits and (2) that her attorney, the defendants, and the attorney for the defendants engaged in a conspiracy to deprive her of her civil rights by, inter alia, altering and falsifying documents. In addition, she has filed additional papers accusing the district court judge of willfully falsifying the facts set forth in his memorandum opinion and conspiracy with the defendants, their attorney, and her attorney to deprive her of her civil rights. We construe these additional papers as amendments to appellant's petition for rehearing.
 
 
 10
 We have carefully reviewed appellant Taylor's petition as amended, the response thereto, and the district court record. We find the petition, which is largely incoherent, to be conclusory and to allege matters which should be presented to the district court in the first instance. The petition for rehearing is therefore denied.
 
 
 
 [1]
 The Department of Agriculture and Bob Berglund, U.S. Department of Agriculture Secretary, were dismissed as defendants by the court on April 2, 1980
 
 
 [2]
 The trial transcript shows that appellant's original bid proposal was incorrect, due to her miscalculation of the actual number of days covered by the year-long program. She had erroneously included the summer months, which were covered by the Summer Food Services Program. However, after adjusting her bid for the correct number of days, she was still the low bidder
 
 
 [3]
 The Honorable James H. Meredith, Senior United States District Judge for the Eastern District of Missouri