Robert HERVEY, Jr.; Robert Walker; Robert McGruder, Appellants,

v.

The CITY OF LITTLE ROCK, Appellee.

Estella M. ROBINSON; Mollie White and Belinda Mitchell, Appellants,

v.

The CITY OF LITTLE ROCK, Arkansas; Donald J. Mehlburger; Charles Bussey; Myra Jones; A.M. Sandy Keith; Lottie Shackleford; John Langston; and Webster Hubbell, individually and in their official capacities as members of the Board of Directors of the City of Little Rock, Arkansas, Appellees.

Robert HERVEY, Jr. and Robert Walker, Appellants,

v.

CITY OF LITTLE ROCK, Appellee.

Leo Anderson and Jesse MacHenry Johnson, Jr., Appellants.
(2 Cases)

Mollie WHITE

v.

CITY OF LITTLE ROCK, ARKANSAS; Donald Mehlburger, Charles Bussey, Myra Jones, A.M. Sandy Keith, Lottie Shackleford, John Langston and Webster Hubbell, individually and in their official capacities as members of the Board of the City of Little Rock, Arkansas. (2 Cases)

Estella ROBINSON

v.

CITY OF LITTLE ROCK. (2 Cases)

Nos. 84–1407, 85–1159 and 85–1160.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1985.

Decided March 31, 1986.

Rehearing and Rehearing En Banc Denied May 22, 1986 in Nos. 84–1407 and 85–1160.

Janet Pulliam, Little Rock, Ark., for Leo Anderson.

Richard Quiggle, Little Rock, Ark., for other appellants.

Philip K. Lyon, Little Rock, Ark., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

HENLEY, Senior Circuit Judge.

Appellants in this class action employment discrimination litigation challenge the district court's [1] decertification of the class and dismissal of all claims. We affirm.

The procedural history of these consolidated actions is set out in the court's two opinions, *Hervey v. City of Little Rock*, 101 F.R.D. 45, 46–48 (E.D.Ark.1984) (*Hervey I*), and *Hervey v. City of Little Rock*, 599 F.Supp. 1524, 1525 (E.D.Ark.1984) (*Hervey II*), and will not be discussed in detail here. Appellants are several employees and former employees of the City of Little Rock. Robert Hervey and Robert Walker, two black male employees of the City, filed the individual and class complaint in the lead case on January 24, 1980. The individual actions of Mollie White and Estella Robinson were subsequently consolidated with the lead case, and several individuals including Belinda Mitchell and Leo Anderson were allowed to intervene in the consolidated action. The City was charged with several violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and of 42 U.S.C. §§ 1981 and 1983. The class was divided into promotion, discharge, and terms and conditions subclasses and was certified by the court.

The trial was divided into three sessions. During the first session the court tried the discharge subclass claim and the individual discharge claim of Belinda Mitchell. Following this session the court decertified the discharge subclass and dismissed the individual claim of Mitchell. *Hervey I*, 101 F.R.D. at 56. The court then tried the claims of the remaining two subclasses and the remaining individuals during the final two sessions. Following these sessions the court decertified the entire class and dismissed all of the individual claims. *Hervey II*, 599 F.Supp. at 1542. It is from these judgments that these appeals arise.

I.

Appellants first contest the court's decertification of all three subclasses. The parties entered into a class stipulation which was adopted by the court in its class certification order on October 26, 1981. In that order the subclasses were defined as follows:

1. All nonuniformed, nonmanagement, nonsupervisory black persons employed by the defendant who have allegedly been discriminated against because of their race in promotions or transfers since January 24, 1977 for purposes of 42 U.S.C. § 1981 and since 180 day [sic] prior to May 28, 1981 for purposes of 42 U.S.C. § 2000e.

2. All nonuniformed, nonmanagement, nonsupervisory black persons employed by the defendant who have allegedly been discriminatorily discharged because of their race from their employment since August 19, 1979 for purposes of 42 U.S.C. § 1981 and since 180 days prior to May 28, 1981 for purposes of 42 U.S.C. § 2000e.

3. All nonuniformed, nonmanagement, nonsupervisory black employees who have been employed by the defendant who have allegedly been discriminated against in the terms, conditions and privileges of their employment because of their race, for purposes of in-

1. The Honorable Henry Woods, United States District Judge, Eastern District of Arkansas.

junctive relief only, since January 24, 1977 for purposes of 42 U.S.C. § 1981 and since 180 days prior to April 2, 1979 for purposes of 42 U.S.C. § 2000e.

"[A] Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of [Fed.R. Civ.P.] 23(a) have been satisfied." *General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). While class stipulations by the parties may be helpful, they are not complete substitutes for "rigorous analysis." The purpose of this analysis is to protect unknown or unnamed potential class members, and by definition those people do not and cannot participate in any stipulations concocted by the named parties. As noted, a Rule 23(a) inquiry should be made by the trial court prior to certification, even if the named parties have stipulated to the existence of a class. As the district court ultimately recognized, the subclasses in this case probably never should have been certified, *Hervey I*, 101 F.R.D. at 56, but the initial certification has not been challenged and we need not dwell upon it further.

 Prior to a decision on the merits, the court decertified the subclasses for a number of reasons which it felt constituted inadequate compliance with Rule 23(a). The court's duty to assure compliance with Rule 23(a) continues even after certification, *Falcon*, 457 U.S. at 160, 102 S.Ct. at 2372, and its decertification of the subclasses in this case must be upheld absent an abuse of discretion. *Roby v. St. Louis Southwestern Railway*, 775 F.2d 959, 961 (8th Cir.1985).

 Rule 23(a) states that an action may be maintained as a class action only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In this case we are presently concerned mainly with the question whether appellants were adequately representing and protecting the interests of potential class members.

One of the major concerns of the court regarding the adequate protection question was the conduct of appellants' counsel. During the three session trial the discharge subclass was represented by different counsel than were the promotion and terms and conditions subclasses. In its two opinions, the court discussed at length the antagonism and animosity which existed among and between appellants' counsel throughout discovery and trial, *see Hervey I*, 101 F.R.D. at 47–48; *Hervey II*, 599 F.Supp. at 1525–28, and those discussions need not be repeated here. These unfortunate incidents were serious enough to raise real doubts about appellants' ability to adequately protect class interests, and they were properly considered in the court's decertification decision.

The incorrect Title VII opening date for membership in the promotion class presented another major concern to the court. The stipulated definition of the promotion subclass, which was drafted by appellants' counsel, signed by all parties and adopted by the court in its certification order on October 26, 1981, set "180 day [sic] prior to May 28, 1981" as the beginning date for class membership for purposes of Title VII. With this opening date, appellants managed to exclude the promotion class representative, Robert Hervey, from the Title VII promotion class. The opening date which should have been set out in the stipulated definition was 180 days prior to April 2, 1979, the day Hervey filed his EEOC charge.

Appellants did not notice this error until September 25, 1984, when they filed a motion asking the court to correct the date. This motion was made almost three years after the court's certification order was filed and after better than one-half of the trial had been completed using the erroneous time frame. The court refused to cor-

rect the erroneous date, finding that it had become the law of the case.[2]

While it appears that the trial court possibly may have been in error in refusing to correct the opening date, *see Payne v. Travenol Laboratories, Inc.,* 673 F.2d 798, 813–14 (5th Cir.), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982), we need not reach that issue because the incorrect date did not materially affect the decertification decision. The court did use the incorrect date in concluding that some of appellants' class proof was outside of the relevant time frame, but, as will be discussed below, the court's other criticisms of the evidence were sufficient to thoroughly discredit it. While the court may have been mistaken in its unquestioning adoption of the incorrect promotion subclass definition, it surely bears on the competency of the class representation that appellants submitted the incorrect definition to the court and failed to discover the error for almost three years.

Of greatest concern to the court was the completely inadequate class proof presented by appellants. The court's findings as to the class proof are findings of fact and are subject to review under the "clearly erroneous" standard of Fed.R.Civ.P. 52(a). If the court's findings are plausible in view of the record they cannot be clearly erroneous, and if they are based on credibility determinations they are entitled to greater deference. *Anderson v. City of Bessemer City,* —— U.S. ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

Dr. Shapiro, one of appellants' statistical experts, testified that during the relevant time frame blacks possessed about 54% of the jobs with the City. 1980 census information introduced by the City showed that about 32% of the general population of Little Rock is black. The City also showed that in 1980 blacks held 25.7% of the super-

visory positions with the City, and in 1982 blacks held 21.8% of those positions. During the relevant time frame two blacks, Temperlene Grissom and Mahlon Martin, occupied two of the highest positions with the City. Mr. Martin was either Assistant City Manager, City Manager, or Chief Executive Officer from mid-1977 through January of 1983, and Ms. Grissom has been Chief of Employment since 1978.

The trial court severely criticized the statistical evidence produced by appellants' two experts, Dr. Shapiro and Mr. Metzger. *See Hervey I,* 101 F.R.D. at 48–49; *Hervey II,* 599 F.Supp. at 1528–29. Appellants claimed disparate treatment of minorities by the City in discharges, promotions and pay. A prima facie case of classwide disparate treatment is made when a plaintiff proves "by a preponderance of the evidence that the defendant engaged in a pattern or practice of unlawful discrimination in various company policies, that 'discrimination was the company's standard operating procedure—the regular rather than the unusual practice.'" *Craik v. Minnesota State University Board,* 731 F.2d 465, 470 (8th Cir.1984) (quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977)).[3] Classwide disparate treatment is usually proved by using statistics, but "[t]o be legally sufficient these statistics must show a disparity of treatment, eliminate the most common nondiscriminatory explanations of the disparity, and thus permit the inference that, absent other explanation, the disparity more likely than not resulted from illegal discrimination." *Segar v. Smith,* 738 F.2d 1249, 1274 (D.C.Cir.1984) (citing *Teamsters,* 431 U.S. at 358, 97 S.Ct. at 1866), *cert. denied,* —— U.S. ——, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985); *accord, Coble v. Hot Springs School District No. 6,* 682 F.2d 721, 730 (8th Cir.1982) (" 'The use of statis-

---

**2.** In its first opinion dated February 10, 1984, the court recited the erroneous date while setting out the facts of the case. *Hervey I,* 101 F.R.D. at 47. Appellants' motion was filed over seven months later.

**3.** The inquiry is basically the same for the class action claims brought under 42 U.S.C. §§ 1981 and 1983. In Title VII and §§ 1981 and 1983 class actions, the key issue is intent to discriminate. *Craik,* 731 F.2d at 468 n. 5; *Taylor v. City of St. Louis,* 702 F.2d 695, 697 (8th Cir.1983).

tics "is conditioned by the existence of proper supportive facts and the absence of variables which would undermine the reasonableness of the inference of discrimination which is drawn." ' " (Citations omitted.)).

Repeating the district court's criticisms or engaging in an in-depth analysis of appellants' disparate treatment statistics is not warranted here. While appellants challenge every one of the court's criticisms, we cannot say that most[4] of those criticisms were without a basis in the record. At the very least, Metzger and Shapiro failed to eliminate from their statistics the most common explanations for the various alleged disparities. We have considered all of the arguments raised regarding appellants' disparate impact statistics, and we cannot say that the court's decision to discredit them and afford them little weight was clearly erroneous.

In *Hervey I* the court discussed the testimony of twenty-one anecdotal witnesses who alleged a mixture of discharge and other claims. The court found that only three of these witnesses were actually discharged within the relevant time frame, and that their discharges were not the result of racial discrimination. *Hervey I,* 101 F.R.D. at 50. The court noted that most of the testimony was only relevant as background[5] and that "[i]t merits severe criticism for gross abuse of judicial time and economy and for unduly increasing the cost of this litigation." *Id.* at 49. We cannot say that the court's findings as to those twenty-one witnesses were clearly erroneous, and we note that this testimony raised serious doubts about the discharge subclass' compliance with the numerosity requirement of Rule 23(a).

In *Hervey II* the court reviewed testimony introduced by appellants to bolster the promotion and terms and conditions subclass proof. After thoroughly discussing the testimony of the witnesses, the court found no disparate treatment under Title VII and no intentional discrimination under § 1981. *Hervey II,* 599 F.Supp. at 1532. It does not appear that any of the claims of these witnesses was not considered by the court due to the erroneous Title VII promotion subclass opening date, and we cannot say that the court's findings as to those witnesses were clearly erroneous.

Appellants also claimed that the City's testing procedure had an adverse impact on minorities in violation of Title VII. Dr. Shapiro's statistical evidence on this subject was marginally credible because he failed to take into account that different tests were given for different jobs and that these tests were changed and updated periodically. Appellants' disparate impact case is further damaged by the fact that neither of the named representatives of the promotion subclass, Hervey and Robinson, alleged that they had been denied promotions due to the testing procedure. In addition, Shapiro's own statistics showed that no racial disparity existed as to competitive promotions, the only type of advancement where testing is used and considered.

---

**4.** It is unnecessary to address the question of whether the term "promotions" includes only competitive promotions because the several other significant problems with appellants' statistics are more than sufficient to discredit them. We do note, however, that appellants have erroneously interpreted our holdings in *Gilbert v. City of Little Rock,* 722 F.2d 1390 (8th Cir.1983), in two different ways.

First, we did not find the City to be a discriminator in that case. We held that the court erred in not considering all of the elements of the promotional process and we remanded the case for further proceedings. *Id.* at 1398.

Second, "all of the elements of the promotional process" in that case included interviews, tests and other criteria on which a competitive promotion was based. It did not include other ways of getting ahead, such as reclassifications. *Id.* at 1398. We therefore did not hold in *Gilbert* that reclassifications and various other ways of getting ahead constitute promotions and must be considered in promotion class actions.

**5.** Evidence of prior discrimination by a defendant is relevant only as background information and cannot by itself establish classwide discrimination. *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Competent evidence showing that a defendant has discriminated during the proper relevant time frame is always required, no matter what that defendant has done in the past.

As a whole, appellants' class proof was completely inadequate. Like the trial court in *Hervey I* and *Hervey II*, we have to this point discussed the class proof not to reach the merits of the class claims, but instead to evaluate the appellants' compliance with Rule 23(a) at the different stages of the trial. We cannot say that the court's findings regarding appellants' class proof were clearly erroneous.[6]

"The adequacy of representation requirement of Rule 23(a)(4) is of critical importance in every class action." *Dirks v. Clayton Brokerage Co. of St. Louis, Inc.*, 105 F.R.D. 125, 133 (D.Minn.1985) (citing *Bishop v. Committee on Professional Ethics*, 686 F.2d 1278, 1288 (8th Cir.1982)). The court here had notice from the beginning that the adequacy of appellants' representation of class interests could become questionable. Adequacy of representation "entails the concern over whether the class representatives and their counsel will competently and vigorously pursue the lawsuit and the concern that differences exist between the interests of the class representatives and the class." *Id.; see also Paxton v. Union National Bank*, 688 F.2d 552, 562–63 (8th Cir.1982). All of the concerns discussed above reflected significantly on the adequacy and competency of appellants' representation of the class, and when viewed together they can certainly constitute noncompliance with Rule 23(a)(4).

■ Other Rule 23(a) concerns not discussed here also entered into the court's decision. We have considered the numerous issues raised by appellants, but in view of the above discussion we cannot say that the court abused its discretion in decertifying the class. Some clarification of the court's ruling is, however, necessary. Appellants claim that the court decertified the class *and* dismissed all class claims with prejudice. This was obviously not the court's intent, as is evidenced by its expression of concern, both at trial and in *Hervey I* and *Hervey II*, that in the circumstances potential class members should not be unfairly bound by a decision on the merits. We therefore affirm the court's decertification of the class in this case with the understanding that the class was merely decertified and the class claims were not dismissed with prejudice. Finally, we note that notice of the decertification is required only to the extent necessary to reach those potential class members who received notice of certification and relied on being included in the class. *See* Fed.R.Civ.P. 23(d), (e); *Payne*, 673 F.2d at 813. If no notice of certification was given, no notice of decertification is required.

## II.

Appellants have also challenged the court's dismissal of the individual claims of Robert Hervey, Robert Walker, Leo Anderson, Estella Robinson, Mollie White and Belinda Mitchell. The court's findings of fact as to these individuals are entitled to

6. Appellants strongly contend that the district court erred in decertifying the subclasses prior to hearing all of the evidence. They argue that all class evidence, both statistical and individual, should have been considered together, pursuant to *Craik*, 731 F.2d at 471. While we find no error in the court's treatment of the class evidence, we will briefly discuss appellants' arguments.

First we note that the court did not decide the merits of the class claims but only reviewed the class evidence in order to determine adequacy of representation. *See infra* pp. 1230–31. It is therefore questionable whether that part of *Craik* applies to this situation.

Second, *Craik* involved one class and no subclasses. In *Craik* we criticized the district court for its failure to consider statistical evidence and individual testimony together. The present situation is much different because of the three subclasses. Fed.R.Civ.P. 23(c)(4)(B) states that when appropriate, "a class may be divided into subclasses and each subclass treated as a class...." We think it was perfectly proper for the court to treat the discharge subclass as a class and to only consider individual testimony and statistical evidence relevant to discharges before decertifying that subclass. We cannot see how evidence relevant only to promotions could have changed the court's mind about the sufficiency of the discharge evidence.

After decertifying the discharge subclass, the court waited until all evidence, both statistical and individual, had been presented before deciding to decertify the promotion and terms and conditions subclasses. This was also perfectly proper in light of Rule 23(c)(4)(B).

proper deference under the "clearly erroneous" standard of Fed.R.Civ.P. 52(a). *See Anderson,* 105 S.Ct. at 1512.

■ The common inquiry under §§ 1981, 1983 and Title VII is whether intentional discrimination was present. *See Craik,* 731 F.2d at 468 n. 5; *Taylor v. City of St. Louis,* 702 F.2d 695, 697 (8th Cir.1983). In a disparate treatment case, the plaintiff must basically prove that he is a member of a protected class and that the defendant treated him less favorably than similarly situated non-minority employees in circumstances from which intentional discrimination can be inferred. *See Craik,* 731 F.2d at 469.

■ The prima facie case criteria differs for each type of employment decision. Since the court properly decertified the class, none of the appellants was entitled to the presumption of discrimination in his individual case. *See Roby,* 775 F.2d at 963. Without the presumption, an individual plaintiff must prove a prima facie case for his/her claim. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. Upon such a showing by the employer, the burden then shifts back to the plaintiff to prove that the reason given for the decision was pretextual. *See Craik,* 731 F.2d at 469.

■ Belinda Mitchell's individual claim was an alleged discriminatory discharge. *Hervey I,* 101 F.R.D. at 50–51. In order to make out a prima facie case she needed to show that "(1) [s]he is a member of a protected class; (2) [s]he was capable of performing [her] job satisfactorily; and (3) [s]he was discharged." *Johnson v. Yellow Freight System, Inc.,* 734 F.2d 1304, 1307 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 525, 83 L.Ed.2d 413 (1984) (citations omitted).

Mitchell resigned on July 31, 1982 and claimed constructive discharge in her individual action. " 'A constructive discharge exists when an employer deliberately renders the employee's working conditions intolerable ...' " and the actions of the employer are intended to force the employee to quit. *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir.1981) (quoting *Slotkin v. Human Development Corp.,* 454 F.Supp. 250, 255 (E.D.Mo.1978)).

Substantial documentary evidence introduced by appellee shows that Mitchell was a serious disciplinary problem toward the end of her employment. She received reprimands and terminations for wasting time on the job with personal calls and conversations, refusing work, and general rude behavior. It was also discovered that she worked for another employer while she was on paid sick leave from the City. In her testimony Mitchell denied all of the incidents except her abuse of sick leave, but she only attempted to tell her side of a few of the incidents. She was by no means exonerated of any charges by the Civil Service Commission. While they consistently reinstated her upon appeal of her terminations, they always gave her some sort of suspension.

The court chose to credit the City's evidence in this swearing match, and we cannot say that this decision was clearly erroneous. Mitchell was not constructively discharged under the *Bunny Bread* test. The actions of the City were legitimate disciplinary actions, and Mitchell's problems also show that she was not capable of performing her job satisfactorily. The City did not intentionally discriminate against Mitchell, and we therefore affirm the court's dismissal of her individual claim.

Robert Hervey and Leo Anderson both complained of promotion discrimination. In order to make out prima facie cases they need to show "that [they] belong[ ] to a protected class, applied for ... available job[s] for which [they were] qualified, but [were] rejected [in] circumstances which allow the court to infer unlawful discrimination." *Craik,* 731 F.2d at 469.

■ Hervey complained of being denied promotion to the position of Vehicle Mechanic on April 2, 1979. *Hervey II,* 599 F.Supp. at 1533–34, 1542. Hervey had been working as an Assistant Vehicle Me-

chanic since March 29, 1976, and he was training to be a Vehicle Mechanic. The white male hired by the City for the Vehicle Mechanic position had twenty years experience as a mechanic with sixteen years as foreman of the garage at a large central Arkansas dairy.

Hervey argues that he was doing the work of a Vehicle Mechanic, that he was qualified for the promotion, and that the City went against its policy of promoting from within in hiring the new mechanic. The record reflects that Hervey was performing work that was not nearly as difficult as that required of a Vehicle Mechanic. At the critical time, he was not qualified for the job, and the person who received the position was exceptionally qualified. The City's policy of promoting from within *whenever possible* was not violated. Hervey was later promoted to Vehicle Mechanic on September 15, 1980. We find no error of fact or law in the court's treatment of Hervey, and we therefore affirm the dismissal of his individual claim.

 Leo Anderson complained of not being promoted to the position of foreman at Hindman Golf Course. *Hervey II*, 599 F.Supp. at 1532–33, 1541. Anderson was qualified, but he did not apply for the position. Mark Harness, a white male, was given the job. Anderson first contended that Steve Smith, supervisor of the golf courses, harassed him constantly until he decided not to apply. Later he contended that he did not apply because the job vacancy notice was never posted at Hindman and he therefore did not know when the test was given.

The record does not support Anderson's contentions. The comments attributed to Smith by Anderson were not racial and were probably not harassing. They were certainly not harassing enough to coerce Anderson into not applying for the foreman position. Anderson testified that the job vacancy notice was never posted at Hindman and that none of the workers there had seen it. Smith testified that Anderson was given a copy of the notice, and that as acting foreman Anderson was responsible

for posting it at Hindman. Smith further testified that he later discovered that the notice had not been posted and he then posted a copy himself. Charles Rogers, a worker at Hindman, testified that he had seen the notice at Hindman.

Anderson told several people that he did not want the foreman position because he did not want the responsibility of the job. The court viewed this as the real reason that Anderson did not apply, and we cannot say that this finding was clearly erroneous. Anderson did not apply for the position of foreman at Hindman, and he therefore failed to make out a prima facie case of promotion discrimination.

 Shortly after Harness was chosen for the foreman position, Anderson was transferred from his Park Maintenance II position at Hindman to the same position at War Memorial Golf Course. Anderson claims that this transfer was discriminatory. The court found that this transfer "was based on business necessity and was in no sense motivated by intent to discriminate against Mr. Anderson." *Hervey II*, 599 F.Supp. at 1533 (Finding 9 regarding Anderson). The transfer was not in violation of City policy, and Anderson failed to show that substantial reasons given for the transfer decision were pretextual.

We find no error of fact or law regarding Anderson, and we therefore affirm the court's dismissal of his individual claims.

Estella Robinson alleged both race and sex discrimination in her failure to receive promotions and her failure to receive a requested reclassification. *Hervey II*, 599 F.Supp. at 1535–36, 1541. Robinson filed her EEOC charge on May 27, 1979, and the Title VII liability time frame for her individual claims therefore began on November 27, 1978.

Her main claim is an allegation of sex discrimination in connection with her failure to receive a promotion to the position of South Little Rock Center Supervisor in July of 1978. The position was given to Harlee Watson, a black male. Her allegation of sex discrimination in connection

with this promotion decision was outside of her Title VII time frame. Since § 1981 does not apply to sex discrimination, she could only recover on this claim under § 1983.

◼ Section 1983 provides a remedy for the denial, through some sort of state action, of constitutionally or statutorily created rights. *See Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). We do not feel, however, that the employment rights created by Title VII, 42 U.S.C. § 2000e–2, can be enforced through § 1983. In *Great American Federal Savings & Loan Association v. Novotny,* 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979), the Supreme Court held that Title VII violations cannot be remedied through 42 U.S.C. § 1985(3). The Court reasoned as follows:

> If a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of [the] detailed and specific provisions of the law.... The short and precise time limitations of Title VII would be grossly altered. Perhaps most importantly, the complainant could completely bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII.

*Id.* at 375–76, 99 S.Ct. at 2350–51 (footnote omitted). In *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981), the Court held that two federal environmental statutes were not enforceable through § 1983, stating that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." We therefore hold that Robinson cannot enforce her time-barred Title VII sex discrimination claim through § 1983. *See Greenwood v.*

*Ross,* 778 F.2d 448, 455 (8th Cir.1985); *see also Day v. Wayne County Board of Auditors,* 749 F.2d 1199, 1202–05 (6th Cir. 1984); *Irby v. Sullivan,* 737 F.2d 1418, 1428 (5th Cir.1984).

◼ Robinson is therefore limited to proving that the City violated her equal protection rights under the fourteenth amendment in order to recover under § 1983. In this "mixed motive" situation, she must show that a sexually discriminatory purpose was a motivating factor in the City's promotion decision. If the City then fails to carry the burden of establishing that the same decision would have been made absent the discriminatory motive, an equal protection violation is established. *See Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 265–66, 270–71 n. 21, 97 S.Ct. 555, 563–64, 566 n. 21, 50 L.Ed.2d 450 (1977).[7]

◼ Job duties for the Center Supervisor position included performing some nighttime security work and assisting in loading and unloading food supplies from trucks. These duties led Nathanial Hill, a black male who was the head of the Department of Human Services, to believe that a male was needed for the position, and this belief was expressed by him to Robinson. We believe that this sexually discriminatory purpose was a motivating factor in the decision not to promote Robinson, and the court's finding to the contrary, *Hervey II,* 599 F.Supp. at 1536 (Finding 10 regarding Robinson), is clearly erroneous.

◼ The court further found, however, that "outside of the weight-lifting problem, Mr. Watson's educational background was more in accord with the requirement of the particular job." *Id.* (Finding 11 regarding Robinson). Had the discriminatory factor not been considered, the promotion would have been awarded to the most qualified person. The court correctly found that

---

7. The "same decision" test is applied in a slightly different way in "mixed motive" situations under Title VII. Proof that a discriminatory motive played some part in an employment decision establishes a violation of Title VII and entitles the plaintiff to some relief. The defend-

ant may then avoid an award of promotion and backpay if it proves by a preponderance of the evidence that even in the absence of the discriminatory motive the plaintiff would not have been promoted. *Bibbs v. Block,* 778 F.2d 1318, 1323–24 (8th Cir.1985) (en banc).

Watson was the most qualified, and therefore the City established that the same decision would have been made absent the gender consideration. Sufficient causation did not exist between the sexually discriminatory factor considered and the resulting promotion decision, and the court was correct in not invalidating that decision. *See Arlington Heights*, 429 U.S. at 270–71 n. 21, 97 S.Ct. at 566 n. 21.

We find no other errors of fact or law regarding Estella Robinson, and we therefore affirm the court's dismissal of her individual claims.

 Mollie White's central complaint was that she did not receive a job reclassification in early 1979. *Hervey II*, 599 F.Supp. at 1536–37, 1541. She contends that she was given duties which broadened her job and she therefore deserved the reclassification. The record, however, reflects that the additional duties given to her were within her job description and did not broaden her job. Nothing in the record indicates that she qualified for or deserved a reclassification.

White further contends that every white person in her department received reclassifications. In her testimony she named at most a handful of white employees who had received reclassifications, but she failed to show that these employees were not qualified for or did not deserve new job classifications.

White completely failed to show that she was treated less favorably than similarly situated non-minority employees in circumstances where intentional discrimination could be inferred. She failed to show any intentional race or sex discrimination in the employment decisions that she challenged, and the court's findings to that effect were not clearly erroneous. We therefore affirm the court's dismissal of White's individual claims.

 Robert Walker's complaint was that he was not given permanent light duty when he injured his back on the job and became permanently disabled. *Hervey II*, 599 F.Supp. at 1534–35, 1541–42. Walker contends that several white employees had been given permanent light duty when they were injured on the job. The court found that "[t]he City has never afforded anyone, white or black, permanent light-duty status." *Id.* at 1534.

The court's finding is not materially incorrect. Most of the white employees alleged by Walker to have been given permanent light duty were merely put on light duty until they recovered from a non-permanent injury.[8] The record indicates that Walker may have received this same accommodation earlier in his employment when he was recovering from a non-work related injury. The only white employee who received permanent light duty was Charles Rogers, a Park Maintenance II worker at Hindman Golf Course. Walker was offered a light duty job at a reduced salary. He worked at this position for a short period of time and then quit and was terminated by the City. He is now drawing long-term disability.

Walker contended that the light duty job required him to perform the same mechanic work as was required in his regular Vehicle Mechanic position. He incorrectly believed that any work on a car was the work of a Vehicle Mechanic, and the record does not support his contention.

We do not feel that the City discriminated against Walker. He was only able to show one white employee who received permanent light duty. He failed to show that he was similarly situated to this white employee who was allegedly treated more favorably by the City. Rogers was a groundskeeper at Hindman and was the only man there who could run the sprinkler

---

8. For a similar case *see Boyce v. Reynolds Metal Co.*, 532 F.2d 638 (8th Cir.1976).

 Boyce alleged that Reynolds had created special assignments for other employees who were disabled. However, the record shows that such special assignments were temporary and were made because the employee's disability did not prevent him from performing the assignment. The record shows that ... his disability was such as to prevent him from carrying out any such temporary assignments. *Id.* at 640 n. 5.

system. Walker worked in a completely different department and suffered from a permanent back injury which rendered him incapable of safely performing his more strenuous job as Vehicle Mechanic.

The decision to terminate Walker was based on the fact that he was permanently disabled, the fact that the City needed a capable Vehicle Mechanic in his position, and the fact that the City had no permanent light duty work that he could perform at that time. None of these reasons was discriminatory. After a forty-five day trial period ordered by the Civil Service Commission proved that Walker could not perform his job without further injuring himself, the City reasonably tried to accommodate him by creating a light duty position at reduced pay. Walker failed to prove that he was treated less favorably than other similarly situated non-minority employees in circumstances from which discrimination could be inferred, and we therefore affirm the court's dismissal of his individual claim.

### III.

In summary, we find that the numerous errors and shortcomings in the class aspect of this case weighed heavily on the issue of appellants' compliance with Fed.R.Civ.P. 23(a), and the court did not abuse its discretion in decertifying the class. We therefore affirm the court's decertification with the understanding that none of the class claims was dismissed with prejudice and that all potential class members who received notice of certification should be notified of this decertification. Finally, we affirm the court's dismissal of the individual claims of Robert Hervey, Robert Walker, Leo Anderson, Estella Robinson, Mollie White and Belinda Mitchell.